IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ERIC C. MATTHEWS**                                                       **PLAINTIFF**

**V.**                          **CIVIL ACTION NO. 1:20CV234 HSO-LGI**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF SOCIAL SECURITY**                    **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Eric Matthews appeals the final decision denying his application for a period of disability and disability insurance benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the entire record, including the medical records in evidence, and all the applicable law, the undesigned recommends that this matter be remanded.

On September 26, 2018, Plaintiff filed an application for DIB alleging a disability onset date of April 7, 2018, due to traumatic brain injury ("TBI"), post-traumatic stress disorder ("PTSD"), insomnia, sleep apnea, Morton's neuroma, severe headaches, bilateral flat feet, anxiety, hearing loss, tenosynovitis of the left ankle, and hypertension. He was 39 years old on his alleged onset date with past relevant work experience as a landscape supervisor, combat engineer, auto mechanic, and construction mechanic. Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning

of the Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

Plaintiff is a veteran who has been diagnosed with PTSD. He attends monthly sessions with a social worker and sees a psychiatrist every three months. Plaintiff testified in relevant part that, while he has physical ailments, he cannot work because he cannot be around people and suffers from headaches. As a result, he avoids going to the grocery store, attending family events with extended family, and sitting near anyone at his son's football games.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's PTSD, migraines, insomnia, and tenosynovitis of the left foot/ankle were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work in close proximity to, but with no more than occasional interaction with, supervisors and coworkers, and with no interaction with the public. Based on vocational expert testimony, the ALJ concluded that, given Plaintiff's age, education, work experience, and residual functional capacity, he was unable to perform his past relevant work as a nailing machine operator, mail clerk, and press machine operator.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). On judicial review, this Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence because the expert evidence was not properly considered. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision.

3

An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is not a medical opinion, but an administrative finding of fact. Social Security Ruling 96–8p, *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4). The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that he did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). In making this assessment, the opinions of treating physicians have historically been assigned controlling weight, though ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.[2] Effective March 27, 2017, social security regulations were revised so that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources. 20 C.F.R. § 404.1520(c) (2019). Under the new regulations, supportability and consistency of medical opinions are the most important factors, and

---

[2] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. For claims filed on that date and thereafter, 20 C.F.R. § 404.1520c applies, and it provides, *inter alia*, that no specific evidentiary weight is to be given to medical opinions from medical sources.

ALJs may, but are no longer required to, explain how they considered other factors. *Id.* But an ALJ is free to assign little or no weight to the opinion of any physician when the physician's statements are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

Relevant here, Plaintiff contends that the ALJ's residual functional capacity assessment is not substantially supported by the evidence because the ALJ failed to discuss evidence showing that he had marked mental limitations. In support, Plaintiff cites to the ALJ's assessment of four mental health evaluations: (1) Dr. Burrowes on behalf of the VA on June 22, 2017; (2) Dr. Zakaras on behalf of the Commissioner on June 26, 2017; (3) Dr. LaConsay on behalf of Plaintiff on March 1, 2018; and (4) Dr. Gillespie on behalf of the VA on August 31, 2018. All four agreed that Plaintiff's mental impairments caused limitations. The ALJ's written decision, however, includes only a discussion of the medical findings of Dr. Zakaras and Dr. LaConsay, neither of which the ALJ found to be completely persuasive. Plaintiff contends this was error, along with the ALJ's failure to fully address the assessments of VA psychiatrists, Drs. Burrowes and Gillespie.

As a threshold matter, the undesigned notes that only Dr. LaConsay's and Dr. Gillespie's reports were generated in close proximity to Plaintiff's alleged onset date, with the latter being the only evaluation of record to be conducted thereafter. The reports of both Dr. Burrowes and Dr. Zakaras were generated in June 2017, more than nine

months before the alleged onset date in connection with a previous disability claim. *Matthews v. Saul*, Civ. No. 1:18cv284 LRA (S.D. Miss. Mar. 16, 2020). Moreover, to the extent Plaintiff contends the ALJ failed to properly analyze their expert opinions, not all four evaluations could be categorized as "medical opinions" within the meaning of the regulations. *Kneeland*, 850 F.3d at 759 (C.F.R. § 404.1527(a)(2)). Some "simply outline[] [the physicians'] diagnoses and observations, leaving other personnel to draw conclusions about the implications for [the claimant's] residual functional capacity." *Winston v. Berryhill,* 755 F. App'x 395, 402 (5th Cir. 2018). By comparison, "the definition of a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions. . . ." *Id*. at 403. Arguably, Dr. LaConsay's report is the only report from an examining physician of record that meets this standard.

In March 2018, Dr. LaConsay opined that Plaintiff's "ability to sustain concentration and persist in work-related activity at a reasonable pace, to maintain effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public, and to deal with the normal pressures in a competitive work setting is extremely impaired and is not expected to substantially improve within the foreseeable future." In Dr. LaConsay's opinion, Plaintiff is moderately limited in his ability to perform simple, repetitive tasks, but markedly limited in all other areas, including but not limited to, his ability to understand, remember or apply information, interact with others, adapt or manage himself, and respond appropriately to supervision and co-workers. However, the ALJ found Dr. LaConsay's opinion was unpersuasive for

6

two reasons: Plaintiff failed to fully cooperate in the examination and "the examiner heavily relied upon the claimant's and his wife's self-reporting."

The ALJ also concluded that while the record supports that the Plaintiff has moderate limitations in interacting with others, it does not support any limitations in concentration, persistence, or pace. She cites as evidence, a speech pathology cognitive comprehensive evaluation conducted in February 2018, prior to the alleged onset date. The examiner notes that Plaintiff had "strengths in all areas of attention assessed [,] . . . maintains attention within complex activities and can attend simultaneously to multiple demands with rare minimal cues." The ALJ cites this same evidence for finding the agency psychologist's assessment in October 2018 only partially persuasive. The ALJ adopted the moderate limitations in social interaction assigned, but found the moderate limitations in concentration, persistence, and pace were unsupported based on the February 2018 evaluation.

Six months after Dr. Laconsay's assessment, Plaintiff was evaluated on behalf of the Veteran's Administration by Dr. Gillespie in August 2018, who completed a Review Post Traumatic Stress Disorder Benefits Questionnaire. Dr. Gillespie notes that Plaintiff sees a psychiatrist every three months and a social worker once a month. In addition, Dr. Gillespie notes that Plaintiff's symptoms include, *inter alia*, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, difficulty establishing and maintaining effective relationships, and mild memory loss, such as forgetting names, directions, or recent events, as well as the

impairment of short and long-term memory, *e.g.,* the retention of only highly learned material, while forgetting to complete tasks.

The Commissioner contends that Dr. Gillespie's assessment "is not helpful in assessing Plaintiff's ability to work" because she "simply included Plaintiff's allegations regarding his symptoms that are not supported by the record." The exclusive reliance on Plaintiff's self-reports, if true, would be a sufficient reason to discount such evidence. *Garcia*, 622 F. App'x at 410; *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994); *Zimmerman v. Shalala,* 288 F. App'x 931 (5th Cir. 1998). But this Court's review is limited to the reasons presented in the ALJ's decision, and such reasoning is not set forth therein. *Kneeland*, 850 F.3d at 761.

In fact, it is not apparent that the ALJ was aware of Dr. Gillespie's assessment. The ALJ did not mention Dr. Gillespie by name, reference her examination findings, nor cite her evaluation in her written decision or at the administrative hearing. The undersigned is mindful that "there will always be some evidence that is not specifically discussed in the Commissioner's decision, "*Giles v. Giles v. Astrue*, 433 F. App'x 241, 251 (5th Cir. 2011), and that "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Kneeland*, 850 F.3d at 761 (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). But the "failure to address or—even mention" the only psychological assessment of the four issued after the alleged onset date makes it is difficult to conduct an informed review or harmless error analysis in this instance. *Kneeland*, 850 F.3d at 753; *Audler*, 501 F.3d at 448.

This difficulty is compounded by the uncertainty as to whether, or to what extent, other evidence was considered. The ALJ's residual functional capacity assessment, for instance, limits Plaintiff to light work with no more than occasional interaction with others. No other limitations are assigned. Other evidence of record during the relevant time period, however, indicates that Plaintiff was undergoing therapeutic interventions focused on cognitive function for attention and memory because his "continued complaints of memory and attention difficulty [were] corroborated" on testing, with him "exhibit[ing] weaknesses in the areas of working memory capacity, sequential memory patterns, visual memory identification, conceptual sequential patterns and selective comparison reasoning." The ALJ notes briefly that Plaintiff exhibited "adequate memory span and concentration" in a psychiatric visit in July 2019, but she does not otherwise address the evidence concerning his limitations in these areas, favorable or unfavorable, except for the speech pathology evaluation performed prior to the alleged onset date in February 2018.

An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. Yet here, the ALJ's analysis overall appears to be incomplete. It may be that the ALJ considered evidence showing that Plaintiff's attention deficits improved with cognitive therapy, but absent some clarification in this regard, or at the very least, an indication that the ALJ was aware of such evidence in assessing Plaintiff's residual functional capacity, the undersigned submits the Court cannot confidently determine that all evidence was considered.

Accordingly, the undersigned recommends that this matter be remanded for further development and proceedings consistent with this opinion. On remand, the ALJ should set forth with greater specificity her findings regarding how she weighed the evidence in determining Plaintiff's residual functional capacity, taking care to link her findings to specific evidence through the date last insured.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on December 30, 2022.

s/ LaKeysha Greer Isaac  
UNITED STATES MAGISTRATE JUDGE
